IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEREK M. ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 10-623-GMS |
| | ) |
| DR. DALE RODGERS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

The plaintiff, Derek M. Rogers ("Rogers"), an inmate at the James T. Vaughn

Correctional Center ("VCC), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1]

(D.I. 2.) He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to

28 U.S.C. § 1915. (D.I. 4.) The court now proceeds to review and screen the complaint pursuant

to 28 U.S.C. § 1915 and § 1915A.

**I. BACKGROUND**

Rogers was housed in the VCC infirmary recovering from surgery when, on October 10,

2008, he suffered a seizure, fell from his bed, and fractured his right middle finger. He makes

three specific claims as a result of the fall: delay in medical treatment; misdiagnosis of medical

condition; and unclean conditions.

Count one alleges that following the injury, Rogers complained to the defendant Dr. Dale

Rodgers ("Dr. Rodgers") on numerous occasions until three to four weeks later when his finger

was finally examined. During this time, Rogers was under the direct care of Dr. Rodgers. The

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him
of a federal right, and that the person who caused the deprivation acted under color of state law.
*West v. Atkins,* 487 U.S. 42, 48 (1988).

finger was left untreated until April 2009 when outside oncologist, Dr. Kwan, noticed the injured finger and made inquiry. Dr. Kwan observed an infection and commented that unsanitary conditions at the prison contributed to the condition. He asked Dr. DuShuttle ("Dr. DuShuttle"), an orthopedic surgeon at Kent General Hospital, Dover Delaware, to x-ray the finger. Dr. DuShuttle read the x-ray as revealing a broken finger since October 2008.

Rogers explains that he received treatment at the Kent General Hospital on January 11, 2009. Treatment included traction, and later, on April 12, 2009, pins were surgically inserted into the finger. They were removed on May 21, 2009. The treatments were not successful. Dr. DuShuttle opined to Rogers that the finger could have been saved had there been prompt diagnosis and treatment within forty-eight hours of the injury. Rogers alleges that, with prompt medical attention, his finger would have healed with little to no permanent damage. He further alleges that the delay in medical treatment contributed to permanent damage to his right middle finger with the recommendation of amputation.[2]

In count two Rogers alleges that the defendant Joe Bell ("Bell") x-rayed his finger after Rogers complained for several weeks. A second x-ray was performed on February 27, 2009. Rogers alleges that Bell and Dr. Rodgers incorrectly read the x-rays which resulted in misdiagnoses that the finger was not broken. Rogers alleges that the misdiagnoses contributed to permanent damage and recommendation of an amputation.

In count three Rogers alleges that his finger became infected due to the unclean conditions in the VCC infirmary. While housed there, Rogers observed insect infestation, his

---

[2]It is not clear the injured finger was amputated as recommended.

room was not clean, and the toilet was filthy and smelly.[3]  Rogers alleges that Dr. Rodgers is responsible for failing to house him in a clean environment.

Finally, Rogers alleges that Dr. Rodgers was employed by the defendant Correctional Medical Services ("CMS") and under the supervision of the defendants Carl Danberg ("Danberg"), Commissioner of the Delaware Department of Correction and Warden Perry Phelps ("Phelps").  He alleges that CMS, Danberg, and Phelps are responsible "by respondeat superior" for: (1) failing to train, supervise, monitor, and develop proper procedures for prompt treatment of injuries occurring to inmates while housed in the infirmary; (2) for failing to train, supervise, and monitor the quality of the VCC infirmary; and (3) for failing to train, supervise, and monitor the cleaning staff at the VCC infirmary.  Rogers alleges that CMS', Danberg's, and Phelps' inaction amounted to deliberate indifference and resulted in permanent damages and loss of use of his finger.  (D.I. 2, ¶¶ 1, 2.)

Rogers seeks compensatory and punitive damages, as well as court costs and attorney's fees.

## II. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).  The court must accept all factual allegations in a complaint as true and take them in the light most

---

[3]It was so dirty that Rogers cleaned it himself.

favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Rogers proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Rogers leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, –U.S.– , 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

-4-

(2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that Rogers has a "plausible claim for relief."[4] *Id.* at 211. In other words, the complaint must do more than allege Rogers's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal,*129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. Respondeat Superior

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory

---

[4]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal,* 129 S.Ct. at 1949. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (11th Cir. 2010) (*quoting* Iqbal 129 S.Ct. at 1949.) The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Rogers alleges that the defendants violated his rights under the Eighth Amendment when they delayed medical treatment, failed to diagnosis his medical condition, and housed him in unclean conditions. To state a medical needs claim, Rogers must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To state a conditions of confinement claim, the condition must be so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). In addition, the claim must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

Rogers asserts that CMS, Danberg, and Phelps are responsible by "respondeat superior" for the failure to train, supervise, monitor, and develop procedures. Under pre-*Iqbal* Third

-6-

Circuit precedent, supervisory personnel are liable under § 1983 if they participated in, or had

knowledge of, violations; if they directed others to commit violations; or if they had knowledge

of and acquiesced in subordinates' violations. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d

Cir. 1995). Recently, the Third Circuit reiterated that a § 1983 claim cannot be premised upon a

theory of respondeat superior and that in order to establish liability for deprivation of a

constitutional right, a party must show personal involvement by each defendant. *Brito v. United*

*States Dep't of Justice*, No. 10-2128, 2010 WL 3259383 (3d Cir. Aug. 18, 2010) (citing *Iqbal*,

129 S.Ct. at 1948-49 (not published); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1988)). The Third noted that personal involvement may be established through: (1) personal

direction or actual participation by the defendant in the misconduct; or (2) knowledge of and

acquiescence in the misconduct. *Id.* The Third Circuit has recognized the potential effect that

*Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit. *See, e.g.,*

*Bayer v. Monroe County Children and Youth Servs.,* 577 F.3d 186, 190 n.5 (3d Cir. 2009) (In

light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a

sufficient basis to impose liability upon a supervisory official.) Hence, it appears that, under a

supervisory theory of liability, and even in light of *Iqbal,* personal involvement by a defendant

remains the touchstone for establishing liability for the violation of a plaintiff's constitutional

right.[5] *Williams v. Lackawanna County Prison*, Civ. No. 07-1137, 2010 WL 1491132, at *5

---

[5]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

(M.D. Pa. Apr. 13, 2010).

Rogers has not alleged facts to support personal involvement on behalf of either Danberg or Phelps in the alleged delay of medical treatment, misdiagnosis, or unsanitary conditions of his confinement. Instead, Rogers alleges in a conclusory legal fashion that their inaction amounted to deliberate indifference. The allegations simply amount to a recitation of the legal elements of a constitutional violation. For the above reasons, the court will dismiss as frivolous all claims against Danberg and Phelps pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

With regard to CMS, when a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that CMS is directly liable for the alleged constitutional violations, Rogers "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories). This he has failed to do. Similar to the allegations against Danberg and Phelps, the complaint fails to allege that CMS violated Rogers' constitutional rights. Accordingly, the court will dismiss as frivolous all claims against CMS pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

### B. Medical Needs

As discussed above, to state a medical needs claim, Rogers must allege (i) a serious

medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation).

The misdiagnoses allegations against Dr. Rodgers and Bell merely allege negligence and, therefore, do not rise to the level of a constitutional violation. Accordingly, the court will dismiss as frivolous the misdiagnoses claims against Dr. Rodgers and Bell pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1)[6]

## IV. CONCLUSION

For the above reasons, the court will dismiss all claims against CMS, Danberg, Phelps, and Bell as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). The court will also dismiss as frivolous the misdiagnosis claim against Dr. Rodgers pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Rogers may proceed with his § 1983 medical needs and conditions of confinement claims against Dr. Rodgers.

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

_Nov. 30_____, 2010
Wilmington, Delaware

---

[6]The allegations against Dr. Rodgers for delay in medical treatment and conditions of confinement adequately allege Eighth Amendment violations.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DEREK M. ROGERS,                      )
                                      )
            Plaintiff,                )
                                      )
      v.                              ) Civ. Action No. 10-623-GMS
                                      )
DR. DALE RODGERS, et al.,             )
                                      )
            Defendants.               )

**ORDER**

At Wilmington this 30th day of _Nov._____, 2010, for the reasons set forth in the Memorandum issued this date, it is hereby ordered that:

1. All claims against the defendants Correctional Medical Services, Commissioner Carl Danberg, Warden Perry Phelps, and Joe Bell are **dismissed** as frivolous  pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).  The misdiagnosis claim against the defendant Dr. Dale Rodgers is also **dismissed** as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

2. The court has identified what appear to be a cognizable and non-frivolous medical needs and conditions of confinement claims within the meaning of 28 U.S.C. § 1915A against the defendant Dr. Dale Rodgers.  The plaintiff is allowed to **proceed** against this defendant on these claims

IT IS FURTHER ORDERED that:

1. The clerk of the court shall cause a copy of this order to be mailed to the plaintiff.

2. Pursuant to Fed. R. Civ. P. 4(c)(3) and (d)(1), the plaintiff shall provide the court with "USM-285" forms for the **remaining defendant Dr. Dale Rodgers** as well as for the  **Attorney General of the State of Delaware**, 820 N. FRENCH STREET, WILMINGTON, DELAWARE,

19801, pursuant to DEL. CODE ANN. tit. 10 § 3103(C). The plaintiff has provided the court with copies of the complaint. (D.I. 2.) **The plaintiff is notified that the United States Marshal Service ("USMS") will not serve the complaint until all "U.S. Marshal 285" forms have been received by the clerk of court. Failure to provide the "U.S. Marshal 285" forms for the remaining defendant and the attorney general within 120 days from the date of this order may result in the complaint being dismissed or the defendant being dismissed pursuant to Federal Rule of Civil Procedure 4(m).**

3. Upon receipt of the form(s) required by paragraph 2 above, the USMS shall forthwith serve a copy of the complaint, this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon each of the defendants so identified in each 285 form.

4. A defendant to whom copies of the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form have been sent, pursuant to Fed. R. Civ. P. 4(d)(1), has thirty days from the date of mailing to return the executed waiver form. Such a defendant then has sixty days from the date of mailing to file its response to the complaint, pursuant to Fed. R. Civ. P. 4(d)(3). A defendant residing outside this jurisdiction has an additional thirty days to return the waiver form and to respond to the complaint.

5. A defendant who does not timely file the waiver form shall be personally served and shall bear the costs related to such service, absent good cause shown, pursuant to Fed. R. Civ. P. 4(d)(2). **A separate service order will issue in the event a defendant does not timely waive service of process.**

6. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the

parties or their counsel.

    7. **NOTE: \*\*\*** When an amended complaint is filed prior to service, the court will
**VACATE** all previous Service Orders entered, and service **will not take place**. An amended
complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. §1915(e)(2)
and § 1915A(a). **\*\*\***

    8. **Note: \*\*\*** Discovery motions and motions for appointment of counsel filed prior to
service will be dismissed without prejudice, with leave to refile following service. **\*\*\***

_____
CHIEF, UNITED STATES DISTRICT JUDGE